# Rice *v.* Nirdlinger, Appellant.

*Bankruptcy—Principal and surety—Judgment—Foreign attachment.*

Where a foreign attachment is dissolved by the entry of a bond, and subsequently judgment is entered after appearance in the attachment proceedings and three days after bankruptcy proceedings have been instituted against the defendant, and the defendant is discharged in bankruptcy without any steps ever having been taken by the defendant, or by the receiver in bankruptcy, or by the surety in the attachment bond to bring to the attention of the state court the bankruptcy proceedings, the surety will not be relieved from his liability on the attachment bond by reason of the defendant's discharge in bankruptcy.

Argued Oct. 12, 1909. Appeal, No. 19, Oct. T., 1909, by defendant, from order of C. P. No. 4, Phila. Co., June T., 1908, No. 153, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Ignatius Rice et al., trading as Rice & Hochster, v. Samuel F. Nirdlinger. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit against a surety on a bond in foreign attachment proceedings.

Rule for judgment for want of a sufficient affidavit of defense.

AUDENRIED, J., filed the following opinion:

This action is on the bond given by Nirdlinger in order to secure the dissolution of a foreign attachment by which the plaintiffs had begun an action against the Hepner Hair Emporium Company. The bond was in the penalty of $2,000. Its condition was that, "if the above named defendant shall be condemned in this action at the suit of the plaintiff he shall satisfy the condemnation money and costs, which if they fail so to do, I undertake to do it for them." In spite of its incoherency and lack of grammatical precision, this instrument may fairly be interpreted as an undertaking on the part of Nirdlinger to pay to Rice & Hochster whatever sum they might recover in the action wherein the attachment had issued, up to $2,000, which was the limit of his liability. The plaintiffs aver by their statement that on June 25, 1908, they obtained judgment against the Hepner Hair Emporium for $972.73; that they have issued execution for that amount against that corporation; and that the fi. fa. had been returned "nulla bona" by the sheriff; and they, therefore, claim of the plaintiffs the sum of $994.23 (being the amount of their judgment with costs), together with interest thereon from the date of the entry of the judgment.

The defense set up is that the attachment to secure whose dissolution Nirdlinger gave his bond was levied within four months prior to the day when proceedings in bankruptcy were instituted against the defendant in the attachment; that the judgment referred to in the plaintiffs' statement of claim was entered three days after the commencement of those proceedings; and that the defendant against which said judgment was obtained has since been discharged by the bankruptcy court.

We do not think that these facts, whether considered severally or in conjunction, constitute a good defense to the plaintiffs' claim.

The discharge in bankruptcy of one for whose debt another has become surety does not release the latter from his obligation. Section 16 of the national bankrupt act provides, that, "The liability of a person who is a co-debtor with, or a guarantor, or, in any manner, a surety for the bankrupt shall not be altered by the discharge of the bankrupt."

The fact that the bankrupt proceedings against the Hepner Emporium Company were instituted before the plaintiffs' judgment was obtained is not fatal to its validity. This court had, before the bankruptcy proceedings were begun, obtained jurisdiction of the persons of both plaintiffs and defendant. It also had jurisdiction of the subject-matter of their controversy. No steps were taken by the Hepner Hair Emporium or by its receiver or by the defendant in this case to bring to our attention the fact that a petition in bankruptcy had been filed against the party first named or to obtain a stay of proceedings. Our duty, therefore, was to proceed with the cause, and whatever steps were taken therein were entirely regular and binding on the parties: Eyster v. Gaff, 91 U. S. 521; Thatcher v. Rockwell, 105 U. S. 467; Dimock v. Copper Co., 117 U. S. 559.

It may be true that had the attachment against the Hepner Hair Emporium Company been permitted to continue until the defendant therein had been adjudged a bankrupt, it would have become void and there would have been no need for defendant Nirdlinger to give a bond to dissolve it, but this is no reason why the defendant should be relieved of the liability that he assumed. The argument advanced on his behalf, that it is unjust and inequitable to compel him to pay a debt which could by no possibility be collected from the real debtors, on final analysis means nothing more than that the consideration on which he undertook to pay the debt has failed him. But the consideration for his bond has not failed this defendant. He gave his bond in order to secure the dissolution of the plaintiffs' attachment. The attachment was dissolved. Whether it was worth much or little, the plaintiffs, through Nirdlinger's intervention, were deprived of that chance of realizing on their claim against the Hepner Hair Emporium Company. That

Nirdlinger miscalculated the value of the chance is entirely unimportant. He knew as much of the possibilities and probabilities in the matter as did the plaintiffs. We do not understand how it can be said that he has any greater equity to be saved from loss than have they. Why, then, should he be relieved? If his equity is no higher than theirs the law will leave both parties where it finds them. If Nirdlinger became surety or bail for the Hepner Hair Emporium Company's debt without obtaining counter indemnity, he has only his own folly to blame for the predicament in which he finds himself. By entering judgment against him under this rule, we place him in no worse position than that in which the plaintiffs would be left were judgment refused them. Upon paying their claim the defendant will be subrogated to their rights against the bankrupt, the Hepner Hair Emporium Company: Section 57 of the Bankrupt Act.

Our conclusion on the question before us finds support in King *v.* Block Amusement Co., 126 App. Div. (N. Y.) 48, where it is held that an attachment issued within four months of the filing of a petition in bankruptcy against the defendant therein and discharged by an undertaking for which the surety takes no security, should not be vacated after the adjudication in bankruptcy so as to discharge the surety.

The rule for judgment is made absolute.

In the case of Rice *v.* Hepner Hair Emporium Company, on a rule to open the judgment, AUDENRIED, J., filed the following opinion:

This action was begun by a writ of foreign attachment. The plaintiff sued to recover the price of sundry goods sold and delivered to the defendant. The defendant entered an appearance. Judgment was taken by the plaintiffs for want of an affidavit of defense. We are now asked to open the judgment and permit a defense to be set up. The defendant does not aver that it did not receive the goods enumerated in the statement of claim or that the prices charged therefor are excessive, or that the bill for them has been paid. The defense on which it is proposed to rely is a discharge obtained by the defendant under

the national bankrupt act three months after the judgment was entered against it. It is frankly admitted on behalf of the defendant that the attempt to make use of this defense is intended not so much for its own benefit as in order to help the bail on the bond given to dissolve the attachment with which the action was begun, in his effort to escape from liability on that obligation, suit having been brought thereon against him by the plaintiffs.

It cannot seriously be contended that the plaintiffs' judgment is void or irregular. True it is that it was entered several days after the commencement of the proceedings that led to the defendant's being adjudicated a bankrupt and that finally resulted in its discharge on September 18, 1908. It is, however, to be observed that before the bankruptcy proceedings were set afoot, this court had already acquired jurisdiction of the persons of both plaintiffs and defendant and of the subject-matter of this controversy, and that no steps were ever taken by the defendant or its receiver to stay proceedings here. The bankrupt law does not of its own force oust the jurisdiction of a state court in an action pending before it immediately upon the filing of a petition in bankruptcy against the defendant. It is the duty of the court to proceed to judgment as between the parties before it unless by some proper pleading it is informed of the change in the defendant's status. It cannot take judicial notice of the initiation of the proceedings in bankruptcy. Even the adjudication of the defendant's bankruptcy is without effect to stay the regular course of the administration of justice by a state court as between the parties before it without a timely and proper suggestion thereof by the party affected or his receiver, and such steps as may be taken in such a case before notice of the adjudication is brought to the attention of the court in an orderly manner are valid and binding on the parties in spite of the bankruptcy: Eyster v. Gaff, 91 U. S. 521; Thatcher v. Rockwell, 105 U. S. 467; Dimock v. Copper Co., 117 U. S. 559.

The motion to open a judgment regular in all respects is an appeal to our discretion as a court of equity. In support of its application the defendant relies on Wise's Appeal, 99 Pa. 193, where the Supreme Court, reversing the common pleas, opened

a judgment entered after the commencement of proceedings to have the defendant adjudged a bankrupt, but before the adjudication of his bankruptcy, in order that his subsequent discharge might be pleaded in bar of the plaintiff's claim. The present case, however, differs from that in several important particulars. There the judgment was entered by confession under a warrant of attorney; the defendant never had his day in court; and he knew nothing of the entry of the judgment against him until, after the lapse of almost five years, he was served with a writ of scire facias to revive its lien. In this case the defendant duly appeared, was served with a copy of the plaintiff's statement and had ample notice of the nature of the proceedings against it. In the case referred to, the defendant, immediately on learning of the judgment against him, applied to the court for leave to put in his defense. Here the defendant, although fully apprised of the state of the litigation, took no steps to stay its course, when bankruptcy proceedings were initiated against it, and for three weeks after its discharge from bankruptcy delayed in taking the present rule. Were an action to be brought against the defendant for the recovery of one of the debts provable against its bankrupt estate, its failure to file an affidavit of defense within fifteen days after having being ruled to do so, would entitle its creditor to a judgment in spite of its discharge. It is not unreasonable to expect applications to open judgment in order to let in the plea, of such a discharge to be made within the same space of time after that defense becomes available. A delay of more than fifteen days in taking the rule to open a judgment against one who has been discharged from bankruptcy should be explained, and, in the absence of a reasonable explanation, is, we think, a good ground for discharging the rule. The delay of the defendant in this case to present his motion is not explained. We are not called on now to determine whether he may not be entitled to a stay of execution on the judgment.

Aside from the question of laches, however, there is another reason why the court is disinclined to entertain the defendant's application. Whether the merit of a defense based on a discharge in bankruptcy be great or little, as against a just debt,

the admitted purpose for making use of it in this case is entitled to no favor whatever. The bankrupt laws were enacted to help the unfortunate business man to his feet again by relieving him of the overheavy burden of his debts. The commonwealth is interested in the resumption of his activity in trade and extends its help to him for that reason. We are not given to understand that the defendant is endeavoring to escape from its indebtedness to the plaintiffs with any intent of returning to its business. It states its purpose plainly. Its reason for opening the judgment against it is that it may thus release from his liability to pay the plaintiffs' judgment debt the party who as bail gave bond to dissolve the plaintiffs' attachment. It was never intended that the bankrupt laws should inure to the advantage of any debtors except those whose property has been made available for the benefit of their creditors and who have submitted themselves to the jurisdiction of the bankrupt court. Section 16, of the bankrupt act, provides expressly that "The liability of a person who is a co-debtor with, or guarantor, or, in any manner, a surety for the bankrupt shall not be altered by the discharge of the bankrupt." Plainly, the defendant's surety is not entitled directly or indirectly to the benefit of the bankruptcy legislation. It adds nothing to the equity of his case that the lien of the attachment to secure whose dissolution he became bail for the defendant's debt was one which, had it continued, would have become void upon the adjudication of the bankruptcy of the defendant: McCombs v. Allen, 82 N. Y. 114; King v. Block Amusement Co., 125 App. Div. (N. Y.) 922.

The rule to open the judgment and let the defendant into a defense is discharged.

*Error assigned* was order making absolute rule for judgment against the surety for want of a sufficient affidavit of defense.

*Arthur S. Arnold*, with him *Louis E. Leopold*, for appellant.

*William A. Carr*, with him *W. Horace Hepburn* and *Sidney L. Krauss*, for appellees.

PER CURIAM, December 13, 1909:

The question for decision is very clearly brought out in the two opinions filed by the learned judge of the common pleas, the first rendered upon the rule to open the judgment against the Hepner Hair Emporium Company, and the second upon the rule for judgment for want of a sufficient affidavit of defense in the present case. The order making absolute the latter rule is the one brought up for review in this appeal, and is fully sustained by the opinion of the learned judge, in which we all concur.

Judgment affirmed.