Lumpkin, <T.
(After stating .the facts.)
1. As to the right to recover on the forthcoming bond given for the cotton which was levied on under the mortgage execution, the •case is controlled by the decision in Barfield v. Covington, 103 Ga. 190 (29 S. E. 759). That case is almost identical in its facts with *113 the one now under consideration. There the landlord took the crop of the tenant and applied it to the payment of the rent due to himself, after becoming a surety on the forthcoming bond, but before the day of sale. Prior to the day of sale he sued out & distress warrant and placed it in the hands of the sheriff.
If, after the forthcoming bond was given, but before the time for compliance with the obligation of it had arrived, the .property had been seized and held or sold by the sheriff under and by virtue of liens of superior dignity to the lien of the process first levied, and under which the forthcoming bond was given, the principal or surety might set up such facts as a defense, and assert that the property had been taken from their possession or control by the. law, and they could not produce it. Floyd v. Cook, 118 Ga. 526 (45 S. E. 441, 63 L. R. A. 450); Allen v. Allen, 119 Ga. 278 (45 S. E. 959). In the case now before us,'the law did not prevent the delivery of the property in accordance with the obligation of the forthcoming bond. The surety on that bond made affidavits and caused an execution and a distress warrant in his own favor to be issued and levied on the property. But, according to his pleadings, under an arrangement with the tenant, -for whom he was surety in the forthcoming bond given under the levy of the Finney mortgage, he obtained possession of the property from the sheriff, and sold it at private sale, to save the expense of legal proceedings, as he claimed. He gave to the sheriff a forthcoming bond. But as he was the plaintiff, who would be the person to enforce such bond, and was also the principal in it, he was practically giving bond to himself, in order to get the property out of the possession of the sheriff and into his own. This was a method of getting rid of a former levy, and of the obligation of a forthcoming bond, not recognized by law, and was ineffectual for that purpose.
In the Barfield case, supra, it was said, that, while the surety on the forthcoming bond had a landlord’s lien for rent upon the crops grown upon the rented premises, superior to the lien of the common-law judgment of the obligees in the bond, “yet, in order for him to realize the benefit of such superior lien, under the facts of this case, it was necessary for him to have sued out a distress warrant against Barfield [the tenant and principal in the bond], placed it in.the hands of the sheriff, and demanded that the pro *114 ceeds of the sale of the crop be applied to the satisfaction of the lien for rent, in preference to the judgment lien.” In the present case, had Wall complied with the terms of the bond, and delivered the property to the sheriff at the time and place of sale under the mortgage execution, he could have foreclosed his lien and placed the execution with the sheriff to claim the proceeds of the sale.' But he could not refuse to deliver the property because he had gotten possession of it, directly, as in the Barfield case, or indirectly, as in the present case, and sold it as a means of paying his own claims, and thus prevent a recovery on the bond; nor could he accomplish that result by setting up that the fund which he had thus raised at private sale ought to be awarded to him, as if it had been raised by the sheriff.
2. In Barfield v. Covington, supra, it was held that it did not furnish valid matter of defense, in ‘a suit on a forthcoming bond given by a defendant, that a third person had filed a claim to the property after the giving of such a bond. In a proper case, the amount collected might be required to be held for the benefit of whom it might concern. Aycock v. Austin, 87 Ga. 566 (13 S. E. 582). If the interposition of a claim by a third party will not relieve the surety on the forthcoming bond, a fortiori, where the surety on the bond has taken possession of the property and sold it, he can not protect himself from a recovery by then interposing a claim to the property. On his own showing made in this case, he had no title to the property.; The fact that in his affidavit, made for the purpose of obtaining a distress warrant, he stated that Andrews, his tenant, was indebted to him In “the sum of 6,000 pounds of middling lint-cotton of the value of $622.50,” did not show that he had title to any particular cotton, but the contrary. And when, he caused a distress warrant to be levied on the cotton as the property of the tenant, and then took possession of it under an agreement with the tenant, he made it evident that it was not his cotton 'at the time of the‘levy of the prior process and the giving of the forthcoming bond on which he was surety.
3. In Carr v. Houston Guano & Warehouse Co., 105 Ga. 268 (31 S. E. 178), where a mortgage fi. fa, was levied on two mules, and an affidavit of illegality interposed,' and a forthcoming bond given, it was held, that, after the illegality was dismissed and the execution ordered to proceed, the obligors in the bond could not *115 excuse themselves from delivering the .property on the day of the sale, “unless they show affirmatively that their failure to return the property when called for by the levying officer was caused by the act of God, and was in nowise the result of their conduct or negligence.” Evidence was introduced in that ease to show that one of the animals died from a disease known as the blind staggers ; that two more died in a pasture in a swamp; that the pasture was a fair one; and that a crop of peas had been raised that year on the land which furnished such pasture. It was' said that the proof was otherwise silent as to the cause of the disease and the care and attention which the animals received from the obligor; and that this testimony was not sufficient to show that the death of the animals' did not result from improper care and attention on the part of the obligor in whose possession, the mules were suffered to remain. See also Young v. Waldrip, 91 Ga. 765 (18 S. E. 23). When measured by the rule laid down in those cases, the surety in the present case clearly failed to make out a sufficient defense with respect to the non-delivery of the horse. If the general testimony of the surety in regard to the death of the mule was sufficient to raise a question for the jury, rather than authorize the direction of a verdict by the court, this would not require a reversal. It appears from the allegations in the petition, admitted by the answer, that the issues raised by the illegalities to the mortgage fi. fas. were tried together, and a verdict rendered for the plaintiffs for $275 principal, $27 attorney’s fees, and $35 interest, and the'executions were ordered'to proceed.
Suit was brought on the two forthcoming bonds at the same time. The defendant, in order to obtain the opening and conclusion, 'admitted a prima facie case in favor of the plaintiffs, including a statement that the value of the total property was in excess of the plaintiffs’ demand. The defendant surety testified that the cotton would have brought $582.80 on the day of the sale, and that1 the horse was worth $50 and the mule $75. The verdict directed was much less than the defendant showed the value to be, regardless of the value of-the mule. The verdict was not two separate 'findings on the two bonds, ■ but a single verdict based on the former verdict on the issues made by the affidavits of illegality.

Judgment affirmed.

Fish, G. J., absent: The other Justices concur.